## KENNY v. KNICKERBOCKER BREAD & YEAST CO.

(Supreme Court, Appellate Division, First Department. February 4, 1910.)

DAMAGES (§ 124*)—BREACH OF CONTRACT—MEASURE OF DAMAGES.

Where plaintiff contracted to furnish defendant for a lump sum certain machinery, part of which he had on hand and part of which he had to secure, and the labor necessary to install it, all of which he had to supply, and defendant refused to perform his part of the contract before any

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

work had been done, the measure of plaintiff's damages is the difference between what it would have cost him to perform the contract and the contract price.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 335; Dec. Dig. § 124.*]

Appeal from Trial Term, New York County.

Action by Paul T. Kenny against the Knickerbocker Bread & Yeast Company. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

John F. Fenlon (John V. Judge, of counsel), for appellant.
Frederick W. Hamberg (Walter E. Cook, of counsel), for respondent.

CLARKE, J. This action was brought on a written agreement, dated March 20, 1906, reading:

"You are hereby requested and authorized by the undersigned (hereinafter called the purchaser) to install in the building No. 536 East 72d street, borough of Manhattan, N. Y., * * * the following: One 12x12 Armington-Sims engine, 2 belted 25 K. W. dynamos G. E., 2 Otis electric elevator machines, and 1–20 and 1–10 horse power Crocker-Wheeler new motors, and furnish in conjunction therewith the following labor and material: All trucking to building, also all necessary foundations, so that the above may be set in position ready for piping, wiring, belting, and cables; 4 Roebling's best grade of flexible cables to be included with elevator machinery. The above installation is to embody in its construction the best class of engineering practice and so designed as to conform with the rules of the department of water supply, gas, and electricity, as well as the New York Board of Fire Underwriters, the latter company's certificate to be obtained and turned over at actual cost over and above the figure mentioned below. In consideration of the execution of the foregoing, the undersigned agrees to pay to the said Kenny Electrical Mfg. Co., its heirs or assigns, the sum of $4,500 as follows: One half on delivery of apparatus, and the balance 30 and 60 days after plant is in operation. All agreements are contingent upon strikes, interferences, accidents, and other unavoidable delays beyond and over which we have control. [Signed] Knickerbocker Bread & Yeast Company by T. F. Townsley, Pres., Purchaser.

"Accepted twentieth day of March, 1906. Submitted by Kenny Electrical Mfg. Co., per Paul T. Kenny. All of above machinery guaranteed free from defects for one year, and any defects developing will be made good, normal wear and abuse being excepted. P. T. Kenny."

Among the terms and conditions referred to in and made part of the agreement was a provision that "the foregoing apparatus and material" should remain the property of the Kenny Electrical Manufacturing Company until fully paid for, and that this—

"purchaser agrees to afford the Kenny Electrical Mfg. Co. all necessary rights of way for the speedy execution of the work. Its workmen are to have access to the building where the installation is made at all reasonable hours, and are not to be interrupted for any cause until the installation is completed."

The complaint alleges the making of the written contract attached to the complaint, and—

"that thereafter and at all times plaintiff was ready and willing to perform his part of the contract according to the terms and conditions of the said con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tract, and to supply the defendant with the said goods, wares, and merchandise contracted for therein, and also to furnish such work, labor, and services as required under the terms of said contract; that after said contract was signed * * * and before plaintiff could deliver the goods, wares, and merchandise, or perform the work, labor, and services, provided for under said contract, all of which he was at all times ready and willing to do, the said defendant notified the said plaintiff that it would not perform or carry out the contract on its part and attempted to cancel the same."

At the close of the testimony both sides moved for the direction of a verdict, decision was reserved, and subsequently a decision containing findings of fact and conclusions of law was filed. The court found:

That on the 21st of March, which was the day after the making of the contract, defendant notified the plaintiff that it would not carry out its part of the contract. "That all the articles of machinery which the plaintiff was bound to assemble and install could be used in any place, together or separately, and each of them had a value in the open market. That the value of each and all of said articles on the day of the breach of said contract was as much as that provided for in said contract. That the machinery mentioned in said contract was personal property. That the value of each and all of said articles, two months after said contract was made, was as much as that provided for in said contract."

And as conclusions of law:

"That the general rule of the measure of damages in the case of breach of contract for the sale of personal property is the difference between the price agreed upon and the market value on the day of the breach of the contract. That the plaintiff herein has not sustained any damages."

And the complaint was dismissed upon the merits. The learned court treated the action as one for the sale and delivery of personal property. The contract required the furnishing of certain elevators, machines, engines and cables, and work, labor, and services necessary to their proper installation, for a lump sum. Some of the articles plaintiff had on hand, others he had to procure, and all of the work, labor, and services necessary to the installation he had to supply. The defendant having breached the contract, the plaintiff was entitled to recover by way of damages the value of that contract to him, namely, the difference between what it would have cost him to perform and the contract price.

The case having been disposed of upon an erroneous theory, and an improper rule of damage having been applied, the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.